**OWENSBORO GRAIN COMPANY, Plaintiff,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Defendants.**

**Civ. A. No. 5982.**

United States District Court, W. D. Kentucky, at Louisville.

Nov. 24, 1970.

Brooks Senn, Louisville, Ky., Howard Gould, David Reichert, Stephen D. Strauss, Cincinnati, Ohio, for plaintiff.

Ernest W. Rivers, U. S. Dist. Atty., Louisville, Ky., Robert W. Ginnane, Gen. Counsel Interstate Commerce Comm. and James F. Tao, Atty., Interstate Commerce Comm., Washington, D.C., for Interstate Commerce Comm.

Richard W. McLaren, Asst. Atty. Gen., Dept. of Justice, John H. D. Wigger, Atty., Dept. of Justice, Washington, D.C., for United States.

Joseph E. Stopher, Elbert R. Leigh, Louisville, Ky., Thomas F. McFarland, Chicago, Ill., James L. Tapley, Washington, D.C., J. R. Davis, Richmond, Va., for intervening Railroad defendants.

Before BROOKS, Circuit Judge, GORDON and HOGAN, District Judges.

PER CURIAM.

This railroad rate case was brought to set aside an order of the Interstate Commerce Commission which dismissed plaintiff's complaint. See Owensboro Grain Company v. Louisville & Nashville Railroad Company, et al, 332 I.C.C. 461 (1968). The railroad carriers named as defendants in the proceedings before the Commission have intervened in the instant case pursuant to 28 U.S.C. § 2323.

Plaintiff, a producer of soybean meal whose processing plant is located in Owensboro, Kentucky, alleges that the defendant rail carriers established greatly reduced rates for the shipment of soybeans from Kentucky, Illinois and Indiana to destinations in Alabama, Florida, Georgia, North Carolina, South Carolina, and Tennessee without making commensurate rate reductions for the shipment of soybean meal to these des-

tinations. It is contended that this violates Section 3(1) of the Interstate Commerce Act [49 U.S.C. § 3(1)] because the transportation characteristics of soybeans do not warrant lower rates than for soybean meal. Furthermore, it is argued that this maladjustment of rates results in undue preference and advantage to producers of soybean meal in the six destination states who receive shipments of soybeans from Kentucky, Illinois and Indiana, thereby putting plaintiff at a competitive disadvantage as they must ship their soybean meal at higher rates from Kentucky to purchasers in the six southeastern states. The assailed rates, referred to as the "Big John" rates, were put into effect in 1963 by the railroad carriers and received I.C.C. approval. See, Grain In Multiple-Car Shipments—River Crossings to South, 325 I.C.C. 752 (1965). The new rates were primarily designed to permit railroads to meet the competition for shipment of grain from unregulated trucking and waterway transportation which tended to cause various whole grains to be shipped by truck and water rather than rail.

Following a hearing held pursuant to modified procedures, the examiner's report and recommended order were affirmed and adopted by the Commission. The report contains detailed analysis of the evidence adduced at the hearing which need not be repeated here. It is sufficient to note that a finding was made that the proof failed to establish any injury resulting to the complainant from the adoption of the "Big John" rates. The report stated:

"Generally speaking, the Big John rates on grain were established for the primary purpose of meeting the competition of unregulated trucks * *. In the present case, the evidence introduced by defendants (the railroad carriers) clearly establishes the existence of water competition for the movement of soybeans to Chattanooga, Tenn., and Guntersville, Ala., which are ports on the Tennessee River. Complainant concedes the absence of

any substantial water competition for the movement of meal from Owensboro to the destination territory * *. The demonstrated difference in water competition is a circumstance which tends to justify the assailed rate relationship and constitutes a *prima facie* defense which has not been overcome by complainant."

And the report concluded by holding:

"The necessary conclusion is that complainant has failed to show that it has been subjected to undue prejudice or that the competing processors are being unduly preferred."

We have reviewed the entire administrative record in this case and conclude that the examiner's findings of fact are supported by substantial evidence and that the decision that the assailed rates are not unlawful is fully justified by the record as a whole. It has long been established that the determination of whether a rate is unreasonable or discriminatory is a question on which the finding of the Commission is conclusive if supported by substantial evidence, unless there was some irregularity in the proceeding or some error in the application of the rules of law. Skinner & Eddy Corporation v. United States, 249 U.S. 557, 562, 39 S.Ct. 375, 63 L.Ed. 772 (1919); New England Divisions Case, 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605 (1923). See also, 5 U.S.C. § 706.

Plaintiff also contends that the Commission abused its discretion in refusing plaintiff permission to file "Supplemental Exceptions" to the hearing examiner's report and recommended order. It appears that after the examiner's report was served on plaintiff, according to Commission rules, plaintiff had a month to file exceptions. Upon request this time was extended for another month, during which plaintiff filed its exceptions. Then two months after the extension and ten months after the hearing, plaintiff sought to file a "Supplemental Exception" which raised questions about rates from Kentucky to areas

**260**

entirely outside of the territory defined in plaintiff's complaint. The Commission declined to accept plaintiff's "Supplemental Exceptions". On these facts we cannot find an abuse of discretion in the Commission's actions.

An appropriate order dismissing plaintiff's complaint will be entered.